IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ELIZABETH SEEGERS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 4:26-cv-00042-MJT |
| § | |
| TRUHEALTH, LLC, and AMERICAN § | |
| HEALTH PARTNERS, INC. § | |
| § | |
| *Defendants*. § | |

### DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

Defendants TruHealth, LLC ("TruHealth") and American Health Partners, LLC (incorrectly named in the Complaint as "American Health Partners, Inc.") ("AHP") (together "Defendants") file this Motion to Dismiss Plaintiff Elizabeth Seegers' ("Plaintiff" or "Seegers") Original Complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's claims for disability discrimination and failure to accommodate should be dismissed because, according to the Complaint and attached documents, Plaintiff's treating healthcare provider documented that she would need to continue treatment and would be unable to resume performing all the essential functions of her job for an indefinite period. Under well-established Fifth Circuit precedent, such accommodations are unreasonable and undue burdens, thereby justifying Defendants' termination of Plaintiff's employment.

### I.     PROCEDURAL BACKGROUND

Plaintiff filed her Original Complaint on January 14, 2026.[1] She brings claims of disability discrimination and failure to accommodate under Texas Labor Code Chapter 21 ("Chapter 21").

---

[1] Doc. 1 ("Complaint").

On February 20, 2026, the Court granted Defendants' Agreed Motion for Extension of Time to Respond to Plaintiff's Original Complaint.[2] Defendants timely and appropriately move for dismissal of Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    FACTS

According to the Complaint, Plaintiff worked for TruHealth beginning in 2024 in a position that required travel to different healthcare facilities.[3] Plaintiff's statement and understanding of her job duties are reflected in her Job Description, which lists among the essential functions that she must "work closely with the leadership at the long-term care facilities"; "directly manage" providers and nurse case managers; ensure patient services are delivered timely, effectively, and within the scope of the plan; "participate in clinical training initiatives; and perform other duties as assigned.[4] The Job Description also states that working conditions include risk of exposure to bloodborne pathogens and other contagious illnesses; that work is typically performed in a standard office environment, and that travel may be required.[5] Taken together, it is clear that the essential functions of Plaintiff's job included travel to facilities and direct interaction with staff and patients.

Plaintiff alleges that AHP is the owner and parent of TruHealth.[6] Plaintiff further alleges that in February 2025, she contracted COVID-19 and developed pneumonia.[7] On February 19, 2025, Plaintiff's primary care physician provided her a medical note, stating, "Elizabeth Seegers

---

[2] Doc. 9, 10.

[3] Complaint at ¶¶ 2, 10 (emphasis added).

[4] Ex. A at p. 1.

[5] *Id*. at p. 3.

[6] Complaint at ¶ 3.

[7] *Id.* ¶ 13.

was seen on 2/19/25 for a post hospital visit. She is recovering from covid and pneumonia and will return to work on 3/3/25."[8] Plaintiff alleges that nine days later, on February 28, 2025, she informed her supervisor and Defendants' human resources department that: "I am still recovering from pneumonia. I am weak and deconditioned and even walking short distances is difficult" and that "[m]y physicians recommend that I do not work in a patient facing capacity due to risk of contracting additional illnesses and further worsening my condition."[9] Plaintiff conceded that she was unable to travel, stating, "I will need some time to continue to recover before I am able to travel again for facility meetings."[10]

According to Plaintiff, Defendants engaged in the interactive process through Defendants' human resources representative, Sarah McNeil, who asked Plaintiff: "Do you have anything from your doctor stating your inability to travel?"[11] Plaintiff responded on March 3, 2025—the date on which she was first anticipated to return to work–by providing medical notes that said she should not work with patients in long-term care facilities; "[d]riving and ambulation are difficult for her at this time"; and that she was scheduled for a follow-up visit more than four weeks later on April 10, 2025.[12] Notably, the physician's note did not include an anticipated date on which Plaintiff would complete treatment or be allowed to travel to facilities or freely interact with staff and patients.[13]

As such, Defendants informed Plaintiff that, because her accommodation request was

---

[8] *Id.* ¶ 14.

[9] *Id.* at ¶ 16.

[10] *Id.* at ¶ 18.

[11] *Id.* at ¶ 19.

[12] *Id.* at ¶¶ 21-22.

[13] Ex. B.

3

"indefinite" and she was unable to perform the essential functions of her position, she would be terminated.[14] Plaintiff alleges she followed up with Defendants asking them to reconsider, again, providing no return-to-work date, and instead stating she could not return for 4-6 weeks and could not travel "for a few weeks while I recover from my illness."[15]

Plaintiff alleges that she timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWC") alleging disability discrimination and failure to accommodate and has satisfied all administrative prerequisites to suit.[16] Plaintiff, however, fails to allege the date that she filed her Charge and the date she received a notice of right to sue from the EEOC or TWC.[17]

### III.  STANDARD OF REVIEW

Under Rule 12(b)(6), "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liability for the misconduct alleged." *See Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2022); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a plaintiff's allegations must establish more than a "sheer possibility" that the defendant acted unlawfully). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007), *citing Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Thus, to avoid dismissal at the pleading stage, the complaint must contain

---

[14] *See* Complaint at ¶ 25.

[15] *Id*. at ¶ 26.

[16] *Id*. at ¶ 9.

[17] *Id*.

well-pleaded factual allegations that plausibly give rise to an entitlement to relief. *See Iqbal*, 556 U.S. at 679-80. "While the Court must accept the well-pleaded facts in the complaint as true, it will 'not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Hartt as next friends for J.H. v. Evadale Independent School District*, 772 F. Supp. 3d 749, 757 (E.D. Tex. 2025, Truncale, J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)); *see also*, *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (Bare recitals of a cause of action, supported by mere conclusory statements, are insufficient to satisfy the federal pleading requirements).

In ruling on a Rule 12(b)(6) motion, a court may consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Id.* (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). Courts may also consider matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop*. Co., 920 F.3d 890, 900 (5th Cir. 2019).

Here, Defendants attach several documents to this Motion, including a Job Description (Exhibit A), which details the duties, responsibilities, and essential functions of the position Plaintiff held. Plaintiff refers to her duties, responsibilities, and essential functions in the first sentence of her factual allegations[18], and there is no doubt it is central to her disability claims. Also attached a doctor's note (Exhibit B) that Plaintiff directly references and quotes from in her Complaint.

---

[18] Complaint at ¶ 10.

## IV. ARGUMENTS & AUTHORITIES

### A. Plaintiff is not a "Qualified Individual" Because She Admits She Could Not Perform the Essential Functions of Her Job.[19]

To establish a *prima facie* disability discrimination claim, Plaintiff must show that: (1) she has a disability she actually identified to her employer; (2) she was otherwise qualified for the job; [and] (3) she was subjected to an adverse employment decision on account of her disability. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). Plaintiff's allegations are insufficient. Plaintiff must plausibly allege facts to establish all the elements of a *prima facie* case of disability discrimination under Chapter 21, but she fails to plead any more than the very type of conclusory "labels and conclusions," and "formulaic recitation of the elements of a cause of action" that "will not do." *Norris*, *supra*, 500 F.3d at 464.

A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8); Tex. Lab. Code § 21.128(a). "The determination of qualification is two-fold: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n.14 (5th Cir. 1997). The Fifth Circuit has held that it would be unreasonable to require an employer to eliminate essential job functions, modify job duties, reassign existing employees, or hire new employees. *Toronka v. Continental Airlines, Inc.*, 411 Fed. Appx. 719, 724 (5th Cir. 2011). Employers are not required to

---

[19] Courts in the Fifth Circuit apply the legal standard for ADA cases to resolve disability claims under Chapter 21. *See Rodriguez v. ConAgra Grocer Prods. Co,* 436 F.3d 468, 473-74 (5th Cir. 2006); *Stephens v. Big Spring Herald, Inc.,* No. 1:19-cv-123, 2021 WL 3030064, at *4 (N.D. Tex. Mar. 29, 2021) (finding that because "[t]he Texas Legislature modeled the TCHRA after federal civil-rights law, ... Texas courts look to federal precedent with respect to the ADA when analyzing disability discrimination in employment.").

transfer essential functions of an employee's job; create a new light-duty position; or implement an accommodation that would result in other employees having to work harder or longer. *E.g.*, *Miller v. Metrocare Servs.*, 809 F.3d 827, 831 & n.3 (5th Cir. 2016); *Moreno v. Brownlee*, 85 Fed. App'x 23, 28 (5th Cir. 2004); *Hammond v. Jacobs Field Servs.*, 499 Fed. App'x 377, 382 (5th Cir. 2012).

Moreover, indefinite or open-ended accommodations are unreasonable. *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017) taking leave without a specified date to return is not a reasonable accommodation); *Rogers*, *supra*, 87 F.3d 755, 760 (5th Cir. 1996) (a reasonable accommodation does not require an employer to "wait indefinitely for [the employee's] medical conditions to be corrected.") (internal citation omitted); *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) ("an employer is not required to provide a disabled employee with indefinite leave.").

In *Stockton v. Christus Health Southeast Texas*, a registered nurse at a hospital in Beaumont fell at work injuring her shoulder and later underwent back surgery. *Stockton v. Christus Health Southeast Texas*, No. 1:15-CV-333, 2017 WL 1287550, at *1-3 (E.D. Tex. Feb. 3, 2017). After three months' leave, her treating physician released her to return to light-duty work with several restrictions. *Id*. Namely, Stockton could not lift more than 10 pounds or reach over her head—both of which were essential functions of her job. During her recovery, Stockton's treating providers determined that the physical restrictions were permanent. *Id*. In response, Stockton requested a temporary accommodation of light duty while she appealed the determination and underwent a reevaluation. *Id*. at 12-14. Christus denied the request on the grounds that it was indefinite and, therefore, unreasonable. *Id*. Stockton later argued that, because the restrictions were withdrawn upon reevaluation just a few weeks later, the request was not unreasonable. *Id*. The court disagreed

and, citing *Rogers*, held that the uncertainty surrounding the duration of the accommodation and success in the appeal meant the accommodation was necessarily indefinite and, therefore, unreasonable as a matter of law thereby rendering her unqualified. *Id.* at 13. The court opined: "the notion that the restrictions would be lifted shortly was mere speculation and hope by Stockton at that point." *Id*. Moreover, the request would have resulted in the transfer of essential functions of her position, thereby creating more work for other nurses. *Id*.

The facts at bar are very similar. Here, Plaintiff pleads that traveling to facilities was an essential requirement of her job and the Job Description makes clear the travel was necessary to meet with facility staff and oversee patient treatment.[20] Further, while her primary care physician released her to return to work, her rheumatologist said she could not travel or work with patients until at least April 10, 2025 (more than six weeks later), when she was scheduled for a follow-up appointment.[21] The rheumatologist did not document when the restrictions would end, only that her arthritis continued to be active "despite aggressive treatment" and that she would be reevaluated on April 10.[22] While Plaintiff was "doing [her] best to recover and return to work [at] full capacity" and believed her travel restriction would only last 4-6 weeks[23], that was mere speculation on her part. Neither she nor Defendants knew if or when her rheumatologist would lift her restrictions. As such, Defendants rightfully looked past Plaintiff's optimistic appraisal and instead relied on what they knew at the time, which is that she would be unable to perform the essential functions of her job for an indefinite period. *See also*, *Ott v. Crown Cork & Seal Co., Inc.*, No. C 96-2158 SBA, 1997 WL 231110, at *7 (N.D. Ca. Mar. 26, 1997) (holding plaintiff was not

---

[20] Complaint at ¶ 10; Ex. A.

[21] *Id.* at ¶¶ 18-22, 26; Ex. B.

[22] Ex. B.

[23] Complaint at ¶¶ 18, 26.

a qualified person with a disability where "Plaintiff's subjective belief that he was able to return to work is not supported by the medical evidence."); *Jackson v. Simon Property Group, Inc.*, 795 F. Supp. 2d 949 (N.D. Ca. 2011) ("As a matter of law, Plaintiff cannot be a qualified individual if his own doctors had not released him to attend his job."); *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003) (holding employer entitled to rely on physician's restriction of employee from vacuuming and that "the employee's belief or opinion that she could do the function is simply irrelevant."); *Martin v. State of Kansas*, 996 F. Supp. 1282, 1292 (D. Kan. 1998) (subjective belief that plaintiff can perform essential functions insufficient to rebut medical restrictions), *aff'd*, 190 F.3d at 1133; *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 371 (8th Cir. 2018) ("the ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden and... an employee's subjective belief that he or she can perform the essential functions of the job is irrelevant.").

Plaintiff pleads that she suggested that another nurse visit the facilities in her stead, but this too was unreasonable.[24] Again, employers are not required to transfer essential functions or force other employees to work harder or longer. *E.g.*, *Miller*, 809 F.3d at 831 & n.3; *Hammond*, 499 Fed. App'x at 382; *Stockton*, 2017 WL 1287550, at *13. *See also*, *EEOC v. Ford Motor Co.*, 782 F.3d 753, 764 (6th Cir. 2015) ("we do not 'allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience… If that were not the case, 'every failure-to-accommodate claim involving essential functions would go to trial because all employees who request their employer exempt an essential function think they can work without that essential function.'").

As such, Plaintiff was unqualified for her position, as required, and her disability

---

[24] *Id.* at ¶ 32.

discrimination claim should be dismissed.

### B. Plaintiff's Failure to Accommodate Claim Likewise Fails.

Plaintiff's failure-to-accommodate claim is deficient for the same reasons. To establish a *prima facie* failure-to-accommodate claim, Plaintiff must allege facts from which the Court can draw a reasonable inference that: "(1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *King v. DFW Int'l Airport Bd.*, No. 23-11084, 2024 WL 4132676, at *4 (5th Cir. Sept. 10, 2024) (quoting *Feist v. La. Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)) (internal quotations omitted in *King*). As detailed above, Plaintiff cannot meet the first or third elements of her claim. That is, Plaintiff was unqualified, and her requested accommodation was unreasonable.

Plaintiff sought an accommodation that would excuse her from an essential function of her job for an unknown period. She optimistically estimated that her restrictions would only last 4-6 weeks, but the specialist treating her chronic psoriatic arthritis painted a far less certain picture in the medical record. According to the rheumatologist, Plaintiff's condition was "active" and causing her "continued paid and disability" despite "changes to her treatment plan" and "aggressive treatment," and that she would be reevaluated in six weeks.[25] While she undoubtedly hoped Plaintiff would be able to resume all her duties at that time, Defendants had reasonable doubts as to that outcome and were not legally required to wait indefinitely for Plaintiff's medical conditions to be corrected or shift the essential functions to other employees. As such, Plaintiff was unqualified, and her requested accommodation was unreasonable.

---

[25] Ex. B.

## C. Alternatively, Plaintiff's Illnesses Were Not Disabilities.

Strictly in the alternative, Plaintiff's claims should be dismissed because COVID and pneumonia are not disabilities. "The ADA defines disability as (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (quoting 42 U.S.C. § 12102(1)). The employee must allege facts that show: (1) she has an impairment; (2) the activity on which she relies is a major life activity; and, if so, (3) whether her impairment substantially limits that major life activity. *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003); *accord Gonzalez v. Supreme Court of Tex.*, No. A-04-CA-750-SS, 2006 WL 897745, at *3 (W.D. Tex. Jan. 31, 2006). Whether an impairment is substantially limiting depends on "its nature and severity, its duration or expected duration, and its permanent or expected permanent or long-term impact." *Dupre v. Charter Behavioral Health Sys.*, 242 F.3d 610, 613 (5th Cir. 2001). Specific factual pleading is particularly necessary because "[t]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

Relevant here, "[Chapter 21] explicitly excludes communicable diseases, such as COVID-19, from its definition of 'disability.'" *Sebastiani v. Bexar County Hospital District*, No. SA-20-CV 01093-OLG, WL 11710301, at *13 (W.D. Tex. Sept. 31, 2021) (citing Tex. Lab. Code § 21.002(6)(B)). Likewise, many courts have held that pneumonia is a transitory condition that is not a disability within the meaning of the ADA. *See, e.g.*, *McKnight v. Renasant Bank*, No. 1:21-CV-00139-GHD-DAS, 2022 WL 1342649, at *5–6 (N.D. Miss. May 3, 2022) (concluding that short-term bout with COVID and pneumonia did not constitute a disability under ADA); *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3rd Cir. 2002) ("[P]neumonia is a temporary

11

condition and is not protected by the ADA."); *Reis v. Universal City Dev. Partners, Ltd.*, 442 F. Supp. 2d 1238, 1244 (M.D. Fla. 2006) ("[A] temporary condition, such as ... pneumonia, cannot be the basis of an ADA claim as a matter of law.").

Here, Plaintiff's claim was touched off by her contracting COVID and pneumonia, which are disabilities under established precedent. To the extent Plaintiff attempts to invoke her underlying autoimmune diseases that she "reminded Defendants" about during the process,[26] such an argument would be unavailing given those were not the conditions that sidelined her in the first place.

## V. CONCLUSION

For the foregoing reasons, Defendants move the Court to dismiss Plaintiff's causes of action for disability discrimination and failure to accommodate her alleged disability, with prejudice. Defendants further request their costs of court and any recoverable attorney's fees, and any further relief to which the Court finds they are justly entitled.

Respectfully submitted,

*/s/ Collin K. Brodrick*
Collin K. Brodrick
Texas Bar No. 24087212
cbrodrick@fisherphillips.com
FISHER & PHILLIPS LLP
500 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 220-9100
Facsimile: (214) 220-9122

**COUNSEL FOR DEFENDANTS**

---

[26] Complaint at ¶ 17.

## **CERTIFICATE OF SERVICE**

      In accordance with FED. R. CIV. P. 5(b), I certify that I served the foregoing on all counsel of record by via the Court's ECF system on February 26, 2026.

                                              */s/ Collin K. Brodrick*
                                              Collin K. Brodrick

FP 56070152.1