IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ELIZABETH SEEGERS | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 4:26-CV-00042 |
| TRUHEALTH, LLC; | § | JUDGE MICHAEL J. TRUNCALE |
| AMERICAN HEALTH PARTNERS, INC. | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

### ORDER DENYING DEFENDANTS TRUHEALTH, LLC AND AMERICAN HEALTH PARTNERS, INC.'S MOTION TO DISMISS

Before the Court is Defendants TruHealth, LLC (TruHealth) and American Health Partners, LLC (AHP) (together, Defendants)' Motion to Dismiss (the Motion), filed on February 26, 2026. [Dkt. 11]. Plaintiff Elizabeth Seegers (Seegers) filed her Response on March 13, 2026, making the Motion ripe for review. [Dkt. 16]; *See* E.D. Tex. Loc. Civ. R. 7(f). Defendants filed their reply on March 27, 2026. [Dkt. 19].

For the reasons below, the Motion is **DENIED**.

### I. BACKGROUND

Seegers began working for TruHealth in 2024 as a Clinical Program Manager (CPM), a position requiring "travel to different healthcare facilities." [Dkt. 1 at ¶ 10]. Seegers alleges that she was qualified for her position, and during her employment she performed her job well, received no discipline, write-ups, or performance warnings. *Id*. at ¶ 11.[1]

Seegers has autoimmune conditions, including psoriatic arthritis, that she contends substantially limit major life activities and bodily functions, including immune and musculoskeletal function, traveling, walking, and driving. *Id*. at ¶¶ 12, 44-45. In the alternative, she asserts that Defendants regarded her as

---

[1] The Court accepts all well-pleaded factual allegations in Seegers' Complaint [Dkt. 1] as true. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (per curiam).

disabled. *Id*. at ¶¶ 12, 47. In February 2025, Seegers contracted COVID-19 and developed pneumonia. *Id*. at ¶ 13. On February 10, 2025, she presented to the emergency department with COVID-19, pneumonia, shortness of breath, dehydration, chest pain, and unstable blood pressure; imaging revealed a right-lung infiltrate consistent with pneumonia. *Id.* Seegers required further follow-up care, and on February 19, 2025, her primary care physician stated that she was "recovering from covid and pneumonia and [would] return to work on 3/3/25." *Id.* at ¶ 14. Seegers states that the infection and pneumonia weakened her already compromised immune system and triggered a flare of her autoimmune disease. *Id.* at 15.

On February 28, 2025, Seegers informed her supervisor and Defendants' human-resources department that she was still recovering from pneumonia, was weak and deconditioned, and had difficulty walking even short distances. *Id* at ¶ 16. She further stated that her physicians recommended that she not work in a patient-facing capacity due to the risk of further illness. *Id*. Seegers reminded Defendants that she had multiple autoimmune diseases, including severe psoriatic arthritis, was treated by a rheumatologist, and took prescribed immunosuppressive medication. *Id*. at ¶ 17. Given her condition, Seegers requested temporary accommodations diminishing her travel and patient-facing work while she recovered. *Id.* at ¶ 18. Seegers explained that her arthritis was so bad that navigating the halls, bending, squatting, and stooping to assist patients would be very difficult. *Id*. Seegers added that a right-knee MCL tear compounded her limitations, and she considered herself physically unable to step into the APP role of making her weekly rounds to see patients. *Id.* In an attempt to assure Defendants of her return, Seegers added that she was trying to return to full capacity, believed she could continue working in her role, and could utilize platforms such as Teams or Zoom for facility meetings in the interim until she could resume travel. *Id*.

Defendants acknowledged Plaintiff's request and directed her to engage with AHP's human-resources department. *Id* at ¶ 19. On February 28, 2025, Sarah McNeil, an AHP human-resources representative, asked whether Seegers had documentation from her doctor regarding her inability to travel. *Id.* On March 3, 2025, Seegers emailed Defendants her primary care note and a rheumatology letter. *Id*. at ¶ 20. The rheumatology letter stated that working with patients in long-term care facilities would "put [Seegers] at a greater risk of infection" and should be avoided if possible; that her psoriatic arthritis

remained active despite aggressive treatment; that modification of her work environment would be helpful due to continued pain and disability; and that driving and ambulation were difficult at the time. *Id*. at ¶ 21. Seegers states that the rheumatology documentation reflected that her limitations would be reevaluated at an April 10, 2025 follow-up appointment and did not state that the requested accommodations were permanent or indefinite. *Id.* at ¶ 22.

Seegers alleges that the Defendants did not request clarification from her or her physicians regarding the expected duration of the requested accommodations or whether her limitations were temporary or permanent. *Id.* at ¶ 23-24. Instead, according to Seegers, Defendants concluded that her accommodation request was "indefinite," treated it as incompatible with her position, and terminated her employment because she supposedly could not meet the job requirements. *Id*. at ¶ 25.

After the termination, Seegers emailed Defendants on March 3, 2025, asking them to reconsider their decision. *Id*. at ¶ 26. She again described the requested accommodations as temporary, referring to her inability to step into the APP role for "4-6 weeks" and her request not to travel "for a few weeks" while recovering. *Id*. Despite this request, Defendants did not reconsider or respond. *Id*.

Seegers alleges that she proposed several reasonable accommodations before her termination, including using Teams or Zoom for facility meetings having another nurse practitioner, who was already traveling to other facilities, temporarily cover the Lone Star facility assigned to her. *Id.* at ¶ 29-32. Additionally, Seegers states that other CPMs utilized Teams and Zoom for facility meetings and were not traveling weekly. *Id*. at ¶ 32. Despite this, Seegers alleges that Defendants did not discuss her proposals, explain why they would not work, or offer any alternatives of their own. *Id.* at ¶ 33.

Following her termination, Seegers filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission's Civil Rights Division (TWC). *Id*. at ¶ 9. While she does not specifically allege that she received notice of her right to sue, Seegers does claim to have "satisfied all administrative prerequisites to suit." *See id.* On January 14, 2026, Seegers brought this lawsuit, asserting claims for disability discrimination and failure to accommodate under the Texas Commission on Human Rights Act (TCHRA). [Dkt. 1]. In her complaint (the Complaint), Seegers

alleges that Defendants terminated her because of her disability or perceived disability, denied reasonable accommodations, and failed to engage in a good-faith interactive process. *Id*. at ¶¶ 42-52.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain enough well-pleaded facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff states a plausible claim for relief when he alleges facts that, assumed to be true, raise a "reasonable inference that the defendant is liable for the misconduct alleged." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). When deciding a motion under Rule 12(b)(6), the court must draw all reasonable inferences in the plaintiff's favor. *Id.* However, the court may disregard "legal conclusions couched as factual allegations" and "naked assertions devoid of further factual enhancement." *Id.*

Courts normally rely exclusively on the pleadings to decide a motion under Rule 12(b)(6). However, if the plaintiff attaches evidence to her complaint, the court may use that evidence to evaluate the complaint's sufficiency. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, the court may consider evidence attached to a defendant's motion to dismiss if the evidence is "central to the plaintiff's claims" and referenced in the plaintiff's complaint. *Id.* If a properly attached exhibit, viewed in the light most favorable to the plaintiff, "blatantly contradicts" the plaintiff's allegations, the court may disregard the contradicted allegations. *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021).

## III. DISCUSSION

### A. Defendants' Attachments to the Motion

Defendants attach two exhibits to their motion: a written job description for the CPM position (Exhibit A) and medical documentation from Plaintiff's rheumatologist (Exhibit B). [Dkts. 11-1, 11-2]. Defendants argue that Plaintiff "refers to her duties, responsibilities, and essential functions" in her

complaint and that the documents they seek to attach as Exhibits are "central to her disability claims." [Dkt. 11 at 5]. The Court agrees in part.

In *Collins v. Morgan Stanley Dean Witter*, the Fifth Circuit held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." 224 F.3d 496, 498-99 (5th Cir. 2000). The court further explained that, "[i]n so attaching [the exhibit] the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id*. at 499.

### 1. Reference to Exhibits in the Complaint

Defendants first argue that both Exhibits are "referred to" in Plaintiff's Complaint. The Court agrees as to Exhibit B but not as to Exhibit A.

While the Fifth Circuit has not provided a comprehensive definition of what it means for a document to be "referred to" in the complaint for purposes of the *Collins* doctrine, courts have found the requirement satisfied where the complaint "specifically references" the document the defendant seeks to attach. *See Gross v. United States*, No. 2:20-CV-00192, 2022 WL 425977, at *2 (S.D. Tex. Feb. 10, 2022).

Exhibit B is unquestionably "referred to" in Seegers's Complaint. The Complaint states that Seegers "attached … the letter from [her] rheumatologist documenting [her] health issues and requesting accommodations." [Dkt. 1 at ¶ 20]. Seegers further described the contents of the documents and quotes multiple times in her complaint from the rheumatology letter. [*See id.* at ¶¶ 21-22]. Exhibit B is therefore "referenced in" the Complaint for purposes of satisfying the first element in *Collins*.

Exhibit A presents a closer question. Defendants argue that Plaintiff's references to her "duties, responsibilities, and essential functions" bring the written job description before the Court. [Dkt. 11 at 5]. Defendants rely primarily on Seegers' allegation that she "began working for Defendants in 2024 in a position that required travel to different healthcare facilities." [Dkt. 1 at ¶ 10]. This allegation, however,

merely refers to a job duty; it does not quote, attach, identify, or expressly refer to the written job description. Accordingly, Exhibit A is not referenced in the Complaint in the same way as Exhibit B.[2]

### 2. Centrality of the Exhibits

Even if Exhibit A were sufficiently referenced in the Complaint, it is not "central to" Seegers's claims.

Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, courts have explained that documents are central when they are "necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.,* 453 B.R. 645, 662 (N.D. Tex. 2011); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Thus, "when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye*, 453 B.R. at 662. However, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id*.

*Kaye* illustrates the distinction between a document that is necessary to a claim and one that merely supports a factual allegation. There, the plaintiff relied heavily on a financial report to allege insolvency, but the court refused to incorporate the report because the plaintiff could prove insolvency without it. *Id.* at 662-63. The court explained that heavy reliance on a document does not make it central when the document is only evidence of an element. *Id.* The same reasoning applies here. Seegers must plausibly allege that she was qualified to perform the essential functions of her position with or without reasonable accommodation. *See E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). However, the written job description is not necessary to establish that element. Rather, it is evidence relevant to the essential-function inquiry. The ADA itself provides that a written job description "shall be considered *evidence of* the essential functions of the job." 42 U.S.C. § 12111(8) (emphasis added). Hence, the essential-functions inquiry is not limited to a written job description. In fact, courts have considered numerous factors such as the employer's

---

[2] The Court need not decide whether Exhibit A satisfies the reference requirement because, even assuming that it does, Exhibit A is not central to Plaintiff's claims for the reasons explained below.

judgment, the amount of time spent performing the function, and the work experience of current and past employees in similar jobs. *LHC Grp.*, 773 F.3d at 697-98.

Exhibit A therefore more closely resembles the report in *Kaye* than the contract in *Collins* and is thus not considered to be central to Seegers' claim. Defendants offer Exhibit A to show that travel and facility-facing work were essential functions of Seegers' position and that her requested accommodation would have eliminated or transferred those functions. [Dkt. 11 at 8-9]. While this may make Exhibit A relevant to Defendants' motion, it makes the document more central to Defendants' defense than to Plaintiff's claims. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (holding that a report was not central where it was "much more central to the University Officials' defenses" than to the plaintiffs' claims). Accordingly, the Court does not consider Exhibit A in resolving Defendants' motion.[3]

Exhibit B is different. Seegers' failure-to-accommodate claim requires her to plausibly allege that she was a qualified individual with a disability, that Defendants knew of her disability and *resulting limitations, and that Defendants failed to reasonably accommodate those known limitations. See Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Exhibit B bears directly on those issues. Plaintiff alleges that she submitted the rheumatology letter to Defendants in support of her accommodation request before describing the letter's contents and quoting from it. [Dkt. 1 ¶¶ 20-22]. The letter addresses Plaintiff's autoimmune condition, her work-related limitations, the requested modifications of her work environment, and the scheduled reevaluation of those limitations. [Dkt. 11-2]. It therefore forms part of the accommodation request itself and is central to Defendants' knowledge of Seegers' condition and limitations, the nature and duration of the requested accommodation, and Defendants' stated basis for denying the request as indefinite. The Court therefore considers only Exhibit B.

---

[3] Even if considered, Exhibit A would not conclusively resolve the issue. Not only is travel absent from the document's "Essential Job Duties," but the document states only that "some travel may be required" and "travel may be required." The document also states that reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions. Those statements are consistent with Seegers's allegation that her position *required* travel, but they do not establish at the pleading stage the *essentiality* or non-accommodability of travel.

**B. Failure to State a Claim**

Seegers asserts two claims against Defendants under Chapter 21 of the Texas Labor Code: disability discrimination and failure to accommodate.[4] *See* [Dkt. 1 at ¶¶ 42-62]. Defendants move to dismiss both claims, arguing that Seegers was not a "qualified individual," was not disabled, and requested unreasonable accommodations. [Dkt. 11 at 6-12]. Defendants also argue that Seegers's claims are barred because she failed to adequately plead administrative exhaustion. *Id*. at 4.

**1. Disability Discrimination**

Seegers first alleges that Defendants' termination of her employment violates the TCHRA because she was discriminated against based on her disability. [Dkt. 1 at ¶ 49]. Similarly to the Americans with Disabilities Act (ADA), the TCHRA prohibits employment-based discrimination grounded in an individual's disability. Tex. Labor Code § 21.051. Due to the similarity between the ADA and the TCHRA, Texas courts "look to analogous federal precedent for guidance when interpreting the Texas Act." *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 474 (5th Cir. 2006).[5] A claim of discrimination under the ADA "requires a plaintiff to allege a disability, that [she] was qualified for [her] position, and that [she] suffered an adverse employment action because of [her] disability." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021).

Defendants, relying on the *McDonell Douglas* evidentiary framework, argue that Seegers must plead facts establishing each element of a *prima facie* disability discrimination claim. [Dkt. 11 at 6]. This reliance, however, is misplaced at the pleading stage. The Fifth Circuit has made clear that courts "inappropriately heighten the pleading standard" when they subject a complaint to "a rigorous factual or evidentiary analysis under the McDonnell Douglas framework in response to a motion to dismiss." *Cicalese*

---

[4] Although the Texas Commission on Human Rights (TCHR) has been replaced with the Texas Workforce Commission (TWC), Tex. Labor Code § 21.0015, courts "regularly refer to Chapter 21 of the Texas Labor Code as the TCHRA." *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 688 n.1 (5th Cir. 2024). This Court follows suit.

[5] "The [TCHRA] purports to correlate state law with federal law in the area of discrimination in employment. Federal law prohibiting disability discrimination by employers is found in the… [ADA], and thus courts must look to this statute in interpreting the TCHRA." *Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002) (citations and quotations omitted).

*v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019). The Court therefore asks only whether Seegers has pleaded sufficient facts on the ultimate elements of her claim to make relief plausible. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

### a. Disability

As to the first element of Seegers's disability discrimination claim, Defendants argue that Seegers has not plausibly alleged a "disability" because COVID-19 and pneumonia are temporary conditions that do not qualify as disabilities under the ADA. [Dkt. 11 at 11-12]. Defendants' motion states that COVID-19 and pneumonia "are disabilities under established precedent," but the surrounding argument and cited authorities make clear that Defendants contend the opposite: that COVID-19 and pneumonia are not disabilities. *Id*. at 12. Even accepting Defendants' intended argument, however, the argument fails to address the full scope of Seegers's Complaint.

The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).[6] The statute directs courts to construe the definition of disability "in favor of broad coverage," and provides that an episodic impairment is a disability if it would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(A), (D).

It is true that courts, including this one, have held that merely being infected with COVID-19 and experiencing short-term symptoms, without more, does not constitute a disability under the ADA. *See Gray v. Winco Foods, LLC*, 683 F. Supp. 3d 571, 588 (E.D. Tex. 2023). However, *Gray* does not control the outcome here for two reasons. First, *Gray* was decided at summary judgment, where the plaintiff produced no evidence indicating that his COVID-19 infection substantially limited a major life activity or caused long COVID or recurring symptoms. *Id*. at 587-88. Unlike that case, this case is at the pleading stage, where the Court must accept Seegers's well-pleaded factual allegations as true. Second, and more importantly,

---

[6] Major life activities include, but are not limited to, walking, standing, lifting, bending, and breathing, as well as the operation of major bodily functions, including immune-system, respiratory, and circulatory functions. 42 U.S.C. § 12102(2). Additionally, implementing regulations also include musculoskeletal function as a major bodily function. 29 C.F.R. § 1630.2(i)(1)(ii).

unlike the plaintiff in *Gray*, Seegers does not rely only on a short-term COVID-19 infection as the basis for her claim.

Seegers alleges that she has autoimmune conditions including severe psoriatic arthritis, that substantially limit major life activities and bodily functions, including immune and musculoskeletal function, traveling, walking, and driving. [Dkt. 1 ¶¶ 12, 44-45]. The Fifth Circuit has recognized that psoriatic arthritis can substantially limit the major life activity of walking when active. *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 855-59 (5th Cir. 2010). Seegers further alleges that she takes immunosuppressive medication, that COVID-19 and pneumonia weakened her already compromised immune system, and that those conditions triggered a flare of her autoimmune disease. [Dkt. 1 ¶¶ 15, 17-18]. Additionally, she alleges specific functional limitations, including difficulty walking short distances, difficulty driving and ambulating, difficulty navigating halls, bending, squatting, and stooping. *Id*. at ¶¶ 16, 18, 21.

Thus, the Court does not read the Complaint as asserting only a temporary COVID-19 or pneumonia-based disability. Rather, the Complaint alleges chronic autoimmune conditions and an active flare that substantially limited major life activities and bodily functions. Accepting those allegations as true, Seegers has plausibly alleged a disability under the TCHRA.

### b. Qualified Individual

A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions" of the position she holds or desires. 42 U.S.C. § 12111(8). Thus, to plausibly allege that she was qualified, Seegers must allege facts showing either that she could perform the essential functions of her position despite her disability or that a reasonable accommodation would have enabled her to do so. *See LHC Grp.*, 773 F.3d at 697 (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)).

A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Id.* at 697. In determining whether a function is essential, courts may consider the employer's judgment and any written job description prepared before advertising or interviewing for the position. 42 U.S.C. §

12111(8). However, the employer's judgment and written job description are evidence and not necessarily conclusive. *LHC Grp.*, 773 F.3d at 697-98. The inquiry instead focuses on whether the employer *actually requires* employees in the position to perform the functions asserted to be essential, and factfinders determine essential functions on a case-by-case basis. *Id* at 698.

The ADA recognizes "job restructuring" and "part-time or modified work schedules" as possible reasonable accommodations. 42 U.S.C. § 12111(9)(B). But an employer is not required to eliminate essential functions, reassign those functions to other employees, or create a new position. *LHC Grp.*, 773 F.3d at 698-99. Thus, the question at this stage is whether Seegers has plausibly alleged that she could perform the essential functions of her position with or without reasonable accommodation.

### i. Essential Functions

Defendants first assert that Seegers's own allegations establish that travel and patient-facing facility work were essential functions of the CPM position. [Dkt. 11 at 8-10]. In support, Defendants rely on Seegers's allegation that her position "required travel to different healthcare facilities," and on her statements that she could not travel, could not work in a patient-facing capacity, and was physically unable to step into the APP role and make weekly rounds to see patients. [Dkt. 1 at ¶¶ 10, 16, 18].

However, Seegers's allegation that her position *required* travel is not an admission that travel was an essential job function under the ADA. *See generally Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682-83 (5th Cir. 1996). In *Riel*, the Fifth Circuit held that a factual dispute existed over whether meeting milestone deadlines was an essential function even though the employer required the deadlines and fired the plaintiff for missing them. *Id.* at 682-83. The court explained that an employer's judgment is but one of many factors relevant in determining whether a job function is essential. *See id.* Hence, Seegers's acknowledgment that her position required travel does not, by itself, establish the frequency, nature, or essentiality of that travel.

Nor do the pleadings establish that weekly in-person rounding or stepping into the APP role was an essential function of the CPM position. Seegers alleges that she was physically unable to "step into the APP role and round weekly to see patients," [Dkt. 1 ¶ 18], but she also alleges that she could continue working in her role, that she could use Teams or Zoom for facility meetings, and that other CPMs used

11

Teams and Zoom and were not traveling weekly. *Id*. at ¶¶ 18, 32. These allegations raise factual questions about the actual duties of the CPM position and how those duties were performed in practice. *See LHC Grp.*, 773 F.3d at 698.

While Defendants may ultimately show that travel, in-person facility work, or patient-facing duties were essential functions of Seegers's position, the Complaint does not conclusively establish that they were. Determining the essential functions of the CPM position requires factual development regarding the role's actual requirements, the frequency and importance of travel, the nature of facility-facing work, and the practices of other employees in similar positions. Those issues cannot be resolved against Seegers at the pleading stage.

### ii. Ability to Perform with Reasonable Accommodation

Even if the essential functions of Seegers's job included travel or some facility-facing work, Seegers has plausibly alleged that she could perform those functions with reasonable accommodation.

Defendants correctly state the general rule that an employer need not eliminate essential functions, reassign essential duties to other employees, create a new position, or require coworkers to work harder or longer. *See LHC Grp., Inc.*, 773 F.3d at 698-99; *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999); *Hammond v. Jacobs Field Services*, 499 Fed. Appx. 377, 382 (5th Cir. 2012). Defendants also correctly state that an employer need not wait indefinitely for an employee's medical condition to improve. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759-60 (5th Cir. 1996).

Those general rules, however, do not require the Court to dismiss Seegers' complaint. Seegers does not allege that she requested leave from work, much less indefinite leave. Rather, she alleges that she remained able and willing to work, that she could use Teams or Zoom for facility meetings "in the interim," and that temporary facility coverage was available while she recovered. [Dkt. 1 ¶¶ 18, 32]. She further alleges that other CPMs used Teams and Zoom for facility meetings and were not traveling weekly. *Id.* at ¶ 32. Following her termination, Seegers again characterized the requested accommodations as temporary, referring to her inability to step into the APP role at Lone Star for "4-6 weeks" and her request not to travel "for a few weeks" while recovering. *Id.* at ¶ 26.

12

*Molina* illustrates why that distinction matters. In that case, the court granted summary judgment on a claim based on indefinite medical leave but denied summary judgment on the employee's claim that the employer should have allowed her to continue working with medical restrictions. *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 1002-1004 (W.D. Tex. 2012). The court found factual disputes about whether the restricted function was essential, whether coworkers already assisted each other with the task, and whether the requested assistance would materially change existing work arrangements. *Id.* at 997-1003. Here, Seegers likewise alleges that she could continue working with temporary modifications and that some of the proposed practices were already used by other CPMs. [Dkt. 1 ¶ 18, 32].

The cases cited by Defendants, which involve requests for indefinite leave or light-duty arrangements that reassign essential functions to other employees, do not govern here. For example, in *Stockton v. Christus Health Se. Tex.*, the court deemed the plaintiff's requested accommodation unreasonable when it called for indefinite lifting restrictions and a light-duty arrangement that would have shifted essential duties to other nurses. No. 1:15-CV-333, 2017 WL 1287550, at *13-14 (E.D. Tex. Feb. 3, 2017) (order granting motion for summary judgment).

Unlike the court in *Stockton*, which had a full summary-judgment record at its disposal, this Court may only consult Seegers' complaint and documents incorporated by reference therein. Construed in the light most favorable to her, Seegers' complaint describes temporary, rather than permanent, accommodations. [Dkt. 1 ¶¶ 18, 26, 29-32]. Thus, accepting Seegers's allegations as true, she has plausibly alleged that reasonable accommodations would have allowed her to continue performing the essential functions of the CPM position.

### c. Adverse Employment Action Because of Disability

Finally, Seegers plausibly alleges that she suffered an adverse employment action because of her disability. Termination is an adverse employment action, and Defendants do not dispute that Seegers was terminated. Under the ADA standard applicable to TCHRA disability claims, disability discrimination need not be the sole reason for the adverse employment decision, but it must "actually play a role in the

13

employer's decision making process and have a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008).

The Complaint alleges enough to make that inference plausible. Seegers alleges that Defendants terminated her shortly after she requested accommodations and submitted medical documentation supporting those accommodations. [Dkt. 1 ¶¶ 20-28]. She further alleges that Defendants justified the termination by citing her alleged inability to meet job requirements and the supposed indefinite nature of her restrictions. *Id*. ¶¶ 25, 30. Those allegations permit a reasonable inference that Seegers's disability, disability-related limitations, and accommodation request played a role in Defendants' termination decision. Seegers has therefore plausibly alleged the final element of her disability-discrimination claim.

### 2. Failure to Accommodate

In addition to her disability-discrimination claim, Seegers also asserts a failure-to-accommodate claim under Chapter 21. To state such a claim, she must plausibly allege that she is a qualified individual with a disability, that Defendants knew of her disability and its consequential limitations, and that Defendants failed to make reasonable accommodations for those known limitations. *See Strife v. Aldine Indep. Sch. Dist*., 138 F.4th 237, 245 (5th Cir. 2025); *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

As discussed, Seegers has plausibly alleged that she is a qualified individual with a disability. She further alleges that she told Defendants she was recovering from pneumonia, was weak and deconditioned, had difficulty walking short distances, and had physician-recommended restrictions on patient-facing work. *Id*. at ¶ 16. Seegers then submitted medical documentation, including the rheumatology letter, describing her health issues and requested accommodations. *Id.* at ¶ 20-22. These allegations plausibly establish that Defendants knew of her disability and consequential limitations.

The parties' dispute therefore hinges on the third element: whether Defendants failed to make reasonable accommodations. Defendants argue that Seegers's requested accommodations were unreasonable as a matter of law because they would have eliminated or transferred essential functions, created light duty, burdened other employees, and required Defendants to accommodate indefinite

14

restrictions. [Dkt. 11 at 7-10]. As explained above, those arguments raise factual questions that cannot be resolved on the pleadings. Seegers alleges that her requested accommodations were temporary, that she could continue working, that Teams and Zoom could be used for facility meetings, and that short-term facility coverage was available while she recovered. [Dkt. 1 ¶¶ 18, 26, 32].

Defendants' concern that Seegers's proposal might burden other employees is legitimate. However, the Complaint does not establish that Seegers' requested accommodations would adversely affect her coworkers. Seegers alleges that the proposed coverage would be temporary, that the other nurse practitioner was already traveling to nearby facilities, and that the additional facility would still leave that nurse practitioner with less than a full-time census. *Id*. ¶ 32. Courts have declined to dismiss cases before trial when the plaintiff's requested assistance is consistent with existing work arrangements. *See Molina* 840 F. Supp. 2d at 1002-1003 (finding fact issues where the employee sought assistance with lifting and evidence suggested coworkers already assisted each other and the required assistance would cause little to no change in current work arrangements). Whether Seegers's proposal would have transferred essential functions, required another employee to work harder or longer, or imposed an undue hardship requires factual development.

The same is true for the Defendants' indefiniteness argument. Defendants are correct that the rheumatology letter did not guarantee that Seegers would be released to full duty on April 10, 2025. And, as a general rule, an employer is not required to wait indefinitely for an employee's medical condition to improve. *See Rogers*, 87 F.3d at 759-60. On the other hand, Seegers does not allege that she requested open-ended leave from work. Quite the opposite— she alleges that she could continue working with temporary restrictions and that her requested accommodations would last only a few weeks while she recovered. [Dkt. 1 ¶ 26]. That distinction matters. Courts have treated indefinite leave differently from an employee's request to continue working with medical restrictions. *See Molina*, 840 F. Supp. 2d at 1002-1004. Because Seegers does not allege that her requested accommodations were indefinite, her request was not *per se* unreasonable. *See id.*

15

Finally, Seegers plausibly alleges that Defendants failed to engage in a good-faith interactive process. A request for accommodations triggers the employer's obligation to participate in an interactive process to identify an appropriate accommodation. *Strife*, 138 F.4th at 245-46; *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). And "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005). Once an employee requests an accommodation, the employer must at least engage in a "meaningful dialogue with the employee to find the best means of accommodating [the employee's] disability." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

Accepting her allegations as true, Seegers has plausibly alleged that Defendants failed to engage in "meaningful dialogue" with her following her accommodations request. *See Chevron Phillips Chem. Co.*, 570 F.3d at 621–22. Seegers alleges that Defendants did not ask her or her physicians to clarify the expected duration of her restrictions, did not discuss her proposed accommodations or why they were unsuitable, and did not offer alternatives. [Dkt. 1 ¶¶ 23-25]. Instead, she alleges that Defendants summarily denied her accommodations request and terminated her. *Id.* at 33. Accordingly, Seegers has sufficiently pled Defendants' failure to engage in a "good-faith interactive process" and has stated a failure-to-accommodate claim under the TCHRA.

### C. Administrative Exhaustion

Defendants finally argue that Seegers failed to adequately plead administrative exhaustion because she did not allege the date she filed her charge, or whether, and when, the Equal Employment Opportunity Commission (EEOC) or the Texas Workforce Commission (TWC) notified her of her of right to sue. [Dkt. 11 at 4].

The TCHRA requires a plaintiff to exhaust administrative remedies before filing suit. *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 686 (5th Cir. 2024). To exhaust administrative remedies under the TCHRA, a plaintiff must:

16

(1) file a complaint with the TWC within 180 days of the alleged discriminatory act; (2) allow the TWC 180 days to dismiss or resolve the complaint; and (3) file suit in district court within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint was filed.

*Marquis v. Omniguide, Inc.*, 714 F. Supp. 2d 640, 644 (N.D. Tex. 2010). A complaint filed with the EEOC and forwarded to the TWC may satisfy the TCHRA filing requirements. *Id*. at 644.

Seegers has plausibly pleaded exhaustion. She alleges that she timely filed with both the EEOC and the TWC, that the charge alleged disability discrimination and failure to accommodate, that she satisfied all administrative prerequisites, and that this action was timely filed. [Dkt. 1 ¶ 9]. Defendants identify no fact on the face of the Complaint showing that her charge was untimely, that no TWC filing occurred, or that the required administrative period had not elapsed before this action was filed.

Defendants' focus on the absence of a pleaded right-to-sue date does not warrant dismissal. Under the TCHRA, the right-to-sue letter itself is not part of the exhaustion requirement; it is notice of exhaustion. *Rice v. Russell-Stanley, L.P.*, 131 S.W.3d 510, 513-514 (Tex. App.—Waco 2004, pet. denied); *Marquis*, 714 F. Supp. 2d at 644-45. The statute confirms the point: "[f]ailure to issue the notice of a complainant's right to file a civil action does not affect the complainant's right under this subchapter to bring a civil action against the respondent." Tex. Labor Code § 21.252(d).

Defendants' cited authorities do not require a different result. In *Dao*, it was undisputed that the plaintiff "did not file a disability discrimination charge with the EEOC or with a state or local agency." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). That is not the case here; Seegers alleges that she filed with both the EEOC and the TWC. [Dkt. 1 ¶ 9]. *Shabazz* is also distinguishable because it involved Title VII exhaustion and a complaint that did not allege receipt of a right-to-sue notice. *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 471 (N.D. Tex. 2003). Seegers brings TCHRA claims, and under TCHRA authority, the right-to-sue letter itself is not part of the exhaustion requirement. *Rice*, 131 S.W.3d at 513-14.

Nor does section 21.211 of the TCHRA require dismissal. The Fifth Circuit has explained that section 21.211 "merely means a plaintiff cannot file an administrative complaint [under the TCHRA] after

17

having already" filed a lawsuit or begun other administrative proceedings based on the same conduct; it does not preclude a plaintiff from asserting parallel state and federal theories in court. *Castro v. Tex. Dep't of Criminal Justice*, 541 Fed. App'x. 374, 380 (5th Cir. 2013). *De La Fuente* is distinguishable because the record there affirmatively showed that the plaintiff's administrative claim remained pending and that no notice of right to sue had been issued. *De La Fuente v. S. Glazer's Wine & Spirits of Tex., LLC*, No. 5:25-CV-01154-MA, 2025 WL 3470870, at *1-2 (W.D. Tex. Dec. 1, 2025). The Complaint here does not show that Seegers's administrative proceeding remained pending when she filed suit. Accordingly, dismissal on exhaustion grounds is unwarranted.

### IV. CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. 11] is hereby **DENIED.**

**SIGNED this 8th day of July, 2026.**

_Michael J. Truncale_
Michael J. Truncale
United States District Judge

18